**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:22-CV-00066-GNS-HBB**

MARK M.[1]                                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                            DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Mark M. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 13) and Defendant (DN 15) have filed a Fact and Law Summary.   For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

Pursuant to General Order No. 2019-11 and 28 U.S. C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations (DN 11, 12).   By Order entered August 11, 2022 (Id.), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1  Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

FINDINGS OF FACT

On October 16, 2019, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 20, 235-41).   Plaintiff alleged that he became disabled on October 1, 2018, as a result of degenerative changes of the spine, obesity, depression, and anxiety (Tr. 20, 108, 125, 258). The application was denied initially on March 20, 2020, and upon reconsideration on May 15, 2020 (Tr. 20, 105, 122).[2]   On May 21, 2020, Plaintiff filed a written request for hearing (Tr. 20, 168-69).

On January 28, 2021, Administrative Law Judge Steven Collins ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 Pandemic (Tr. 20, 41).   Plaintiff and her non-attorney representative, Jeff Smith, participated by telephone (Id.).   Additionally, Mary Kessler, an impartial vocational expert, testified by telephone (Id.).

In a decision dated March 31, 2021, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 20-34).   The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2021 (Tr. 22).   At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 1, 2018, the alleged onset date (Id.).   At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative changes of the cervical, thoracic, and lumbar spine; obesity; history of myocardial infarction; medial meniscus tear; depression; and anxiety (Id.).   At the third step, the ALJ concluded that Plaintiff does not

_____

2 The ALJ indicates the application was denied initially on April 7, 2020 (Tr. 20).   As the Disability Determination and Transmittal form indicates March 20, 2020 (Tr. 105), the undersigned has used that date.

have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 24-25).   More specifically, the ALJ determined that Plaintiff can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; he can sit for 6 hours in an 8-hour day and stand and/or walk for 6 hours in an 8-hour day, with normal breaks; he can only occasionally stoop, crouch, crawl, kneel and climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he must avoid more than occasional exposure to vibration, and he must avoid more than occasional exposure to dangerous machinery and unprotected heights; he should avoid more than occasional exposure to extreme heat, extreme cold, humidity and pulmonary irritants, such as fumes, odors, dust, gases and poor ventilation; he can use a cane for ambulation; he is able to perform work involving routine 1 to 5-step tasks, tolerate occasional changes in the work routine or environment and sustain concentration, persistence and pace for 2-hour periods to perform work within these parameters (Tr. 25).   Additionally, the ALJ determined that Plaintiff is unable to perform any of his past relevant work (Tr. 32).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 32-33).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability" from October 1, 2018, through the date of the decision (Tr. 33).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 230-32).   The Appeals Council denied Plaintiff's request for review (Tr. 6-8).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-8).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will review the ALJ's decision and the evidence in the administrative record when the ALJ rendered the decision.   20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

4

<u>The Commissioner's Sequential Evaluation Process</u>

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 *et seq.* (Title II Disability Insurance Benefits), 1381 *et seq.* (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

> 1)      Is the claimant engaged in substantial gainful activity?
>
> 2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
>
> 3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4)      Does the claimant have the RFC to return to his or her past relevant work?
>
> 5)      Does the claimant's RFC, age, education, and past work

5

> experience allow him or her to perform a significant number of jobs
> in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Finding No. 5</u>

    *1.  Arguments of the Parties*

    Plaintiff challenges Finding No. 5 by asserting that the mental RFC determination is not supported by substantial evidence as the ALJ committed legal error by failing to properly evaluate and explain his analysis of the opinion of Gregory Lynch, Ph.D., who performed the agency's consultative psychological examination (DN 13-1 PageID # 832, 840-45).   In response, the Commissioner argues that the ALJ appropriately considered the entire record and applied the supportability and consistency factors set forth in 20 C.F.R. §§ 404.1520c when he found the opinions of consultative psychological examiner Dr. Lynch only partially persuasive (DN 15 PageID # 851, 854-62 (citing Tr. 28, 30, 547-51).

    *2.  Applicable Law*

    The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).

    The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because he filed his application after March 27, 2017. *See* 20 C.F.R. § 404.1520c.   The new regulations explicitly indicate "[w]e will not defer or give

any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[3] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[4]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[5]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).[6]   Consequently, Administrative Law Judges evaluate the persuasiveness of the medical source statements in making the RFC determination.   20 C.F.R. § 404.1520c.

---

3 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).

4 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

5 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

6 Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).

*3.  Discussion*

The ALJ provided an accurate summation of Plaintiff's hearing testimony concerning pain and other symptoms imposed by his physical and mental impairments (Tr. 25-26).   The ALJ indicated while Plaintiff's testimony had been carefully considered, the medical evidence of record did not indicate Plaintiff's symptoms were as limiting as alleged (Tr. 26).   To substantiate this conclusion, the ALJ provided a thorough and precise synopsis of all medical evidence in the record regarding Plaintiff's physical and mental impairments (Tr. 26-29).   Next, the ALJ discussed the medical opinions and prior administrative medical findings in the record concerning Plaintiff's physical and mental impairments (Tr. 29-31).

As mentioned above, Plaintiff challenges the ALJ's assessment of the opinions that consultative psychological examiner Dr. Lynch expressed in January 2020 (Tr. 30).   Specifically, the opinions are as follows: (1) Plaintiff's "capacity to understand, remember, and carry out instructions towards the performance of simple repetitive tasks seems affected by his impairments with only slight limitations noted[;]" (2) Plaintiff's "ability to tolerate the stress and pressure of day-to-day employment seems affected by the impairment with moderate limitations noted[;]" (3) Plaintiff's "capacity to sustain attention and concentration towards the performance of simple repetitive tasks seems affected by the impairment with moderate limitations noted[;]" and (4) Plaintiff's "capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting seems affected by the impairment with moderate to marked limitations noted" (Id.).

The ALJ began his analysis by announcing that he "generally finds persuasive Dr. Lynch's statements as they are generally supported by his objective findings" (Id.).   The ALJ then

8

specifically addressed the persuasiveness of each opinion above.   The ALJ explained that the first opinion was supported by Dr. Lynch's findings that Plaintiff "exhibited normal memory, above average fund of knowledge, and average intellectual functioning and it is consistent with the other normal mental status examinations of record" (Id.).   As to the second and third opinions, the ALJ explained they were persuasive as they are supported by Dr. Lynch's notation that Plaintiff "was distractible but able to spell 'horse' backwards and [Plaintiff's] reported activities of daily living" (Id.).

The ALJ made clear he did not find the fourth opinion persuasive (Id.).   The ALJ explained that the fourth opinion was not supported by Dr. Lynch's own findings which indicated Plaintiff "exhibited normal eye contact and was adequately cooperative," nor was the fourth opinion consistent with Dr. Lynch's notation that Plaintiff "goes shopping twice a month and interacts with his mother daily and other family members periodically" (Id.).   The ALJ also indicated that the fourth opinion was not consistent with the other examinations of record which showed Plaintiff had no difficulty interacting with others (Id.).   Additionally, the ALJ pointed out there was no evidence in the record showing Plaintiff has "exhibited any difficulty interacting or relating to others to suggest that he has more than mild limitations in social interaction" (Id.). Finally, the ALJ explained that the fourth opinion was "not consistent with the other relatively normal mental status examinations of record, which routinely reflect that the claimant was cooperative" (Id.).   For the above reasons, the ALJ found all of Dr. Lynch's opinions only partially persuasive (Id.).

Contrary to Plaintiff's assertion, the ALJ's supportability analysis discusses which of Dr. Lynch's own findings do not support the limitations in the fourth opinion. Further, the ALJ's analysis draws a narrative bridge between Dr. Lynch's fourth opinion and its inconsistencies with other substantial evidence in the record—December 2019 consultative examination report and treatment notes of February, March, June, July, September, and November 2020—which the ALJ had discussed in the pages preceding (*see* Tr. 28-30). For these reasons, the ALJ's persuasiveness rationale complies with 20 C.F.R. § 404.1520c(b)(1) and (c)(2).

Additionally, the undersigned has reviewed the ALJ's mental RFC determination and concludes it is supported by substantial evidence in the record and comports with applicable law. Consequently, Plaintiff is not entitled to relief on this claim.

<u>Finding No. 10</u>

*1. Arguments of the Parties*

Plaintiff alleges that the ALJ's finding—Plaintiff can perform jobs that exist in significant numbers in the national economy including the jobs of assembler, sorter, and packer/packager—is legally erroneous as the ALJ did not resolve the apparent conflict between the vocational expert testimony and the Dictionary of Occupational Titles ("DOT") in light of Plaintiff's RFC requiring a cane for ambulation (DN 13-1 PageID # 845-47) (citing Social Security Ruling ("SSR") 00-04p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Plaintiff asserts that the physical RFC precluded the above-mentioned jobs because the ALJ acknowledged therein that Plaintiff required a cane for ambulation yet failed to address Plaintiff's limitations in reaching and handling while using the cane (<u>Id.</u>).

10

In response, the Commissioner contends that substantial evidence supports the ALJ's reliance on the vocational expert's testimony to find that Plaintiff could perform "other work" existing in significant numbers in the national economy (Tr. 32-33). (DN 15 PageID # 851, 862-68).

2. *Applicable Law*

At the fifth step, the Commissioner has the burden of demonstrating that a significant number of jobs exist in the national economy which the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981).   For

example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making.   20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-29.

SSR 00-4p imposes on the Administrative Law Judge an affirmative duty to ask the vocational expert whether there is a conflict between the vocational expert's testimony and information in the DOT.   SSR00-4p, 2000 WL 1898704.   If there appears to be a conflict, the Administrative Law Judge will elicit from the vocational expert an explanation for the conflict. Id.   Next, the Administrative Law Judge will resolve the conflict by deciding whether the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than the DOT information.   Id.

   *3. Discussion*

The ALJ's first hypothetical question involved a range of light work due to postural, environmental, and mental limitations (Tr. 65-66).   The vocational expert opined that the hypothetical individual would be able to perform the following occupations: (1) "assemblers at a light, unskilled level, with an SVP of 2," the representative DOT No. is 706.684-022, and there are approximately 420,000 such jobs nationally; (2) "sorters at a light, unskilled level, with an SVP of 2," the representative DOT No. is 222.687-014, and there are approximately 136,000 such jobs

nationally; and (3) "packers and packagers at a light, unskilled level, with an SVP of 2," the representative DOT No. is 753.687-038, and there are approximately 338,000 such jobs nationally (Tr. 65-66).

The second hypothetical question included the same limitations as the first hypothetical question, plus the additional limitation that the individual would need the use of a cane for ambulation (Tr. 66).  The vocational expert responded that he did not believe this additional limitation would impact the work itself, "unless the person is required to get up and carry things back to their workstation, and in that case, it would decrease the number of jobs of each of the three categories" (Tr. 67).  In response to the ALJ's request for an estimate of the amount of decrease, the vocational expert responded, "I would say approximately a half" (Id.).

The third hypothetical question included the postural, environmental, mental, and use of a cane limitations from the first and second hypothetical questions but the ALJ reduced the exertional level from light to sedentary, as defined by the regulations (Tr. 67-68).   The vocational expert confirmed that past work is eliminated under the hypothetical (Tr. 68).   The fourth hypothetical included a rate of absenteeism of three or more days a month due to pain or other symptoms (Id.).   The vocational expert confirmed that limitation would exclude all jobs (Id.).

Before completing the examination, the ALJ asked the vocational expert whether her testimony had been consistent with the DOT (Tr. 68).   The vocational expert responded affirmatively (Id.).   Thus, the ALJ complied with his affirmative duty under SSR 00-4p.

During cross-examination, Plaintiff asked if a cane was also needed for balance while standing and would this additional limitation affect the jobs that the vocational expert cited or other

13

work (Tr. 69).   The vocational expert testified that this additional limitation would not affect the sedentary jobs but "would affect the light jobs in that often a person is required to stand for two hours at a time to do their work, and if they needed a cane in order to stand and balance, then that would eliminate light work – excuse me, light work" (Id.).

In his decision, the ALJ commented:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14.   However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.   To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.   The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: an assembler (DOT # 706.684-022), light, specific vocational preparation (SVP) of 2, with 210,000 jobs in the national economy; a sorter (DOT # 222.687-014), light, SVP of 2, with 68,000 jobs in the national economy; and a packer/packager (DOT # 753.687-038), light, SVP of 2 with 169,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  Notably, the vocational expert initially identified a greater number of jobs that exist in the national economy with respect to each of those occupations prior to the inclusion of a cane for ambulation (specifically, 420,000 assembler jobs, 136,000 sorter jobs, and 338,000 packer/packager jobs).   With the addition of a cane limitation, the vocational expert testified the use of a cane would only affect the jobs if the person had to carry objects to the work station, and he testified that with a cane, the previously identified job occurrence numbers would be reduced by 50%.   Accordingly, those numbers been reduced by 50% above, and there remains a significant number of jobs in the national economy the claimant

14

> could perform with the above residual functional capacity assessment.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. . .

(Tr. 33).   For the reasons that follow, the undersigned concludes that the ALJ's findings are supported by substantial evidence in the record and comports with applicable law.

As indicated above, in response to the ALJ's question, the vocational expert confirmed that her testimony in response to the ALJ's hypothetical questions—most of which included the requirement of a cane for ambulation—had been consistent with the DOT (Tr. 68).   Thus, the record shows the ALJ complied with his affirmative duty under SSR 00-4p.   Contrary to Plaintiff's assertion, "the ALJ was under no duty 'to conduct an independent investigation' into the vocational expert's testimony to determine whether it was correct."   O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 318 (6th Cir. 2020) (citation omitted).   Additionally, during the hearing, Plaintiff had the opportunity to cross-examine the vocational expert about this purported "apparent conflict" between the vocational expert's testimony and the DOT, and he did not (Tr. 68-70).   Because the DOT continues to be recognized as a source of reliable job information and Plaintiff did not cross-examine the vocational expert about this alleged "apparent conflict" when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff was able to perform work that existed in significant numbers in the national economy.

15

Equally important, Plaintiff's claim of an "apparent conflict" between the vocational expert's testimony and the DOT is not founded on the hypothetical individual needing a cane for ambulation.   Rather, it is based on the hypothetical individual who also needs a cane for balance while standing (DN 13-1 PageID # 846).   More specifically, Plaintiff relies on the DOT job descriptions to argue if the hypothetical individual also needs a cane for balance while standing then that individual would be precluded from performing the reaching and handling requirements of all three jobs identified by the vocational expert (Id.).   But Plaintiff seems to ignore the vocational expert's testimony—in response to Plaintiff's own hypothetical question—which indicated if the hypothetical individual also needs a cane for balance while standing that would eliminate light work (Tr. 69).   As the vocational expert classified all three jobs as light work (Tr. 66), she implicitly indicated the hypothetical individual in Plaintiff's question could not perform the three jobs.   For the above reasons, there does not appear to be any factual support for Plaintiff's claim of an "apparent conflict" between the vocational expert's testimony and the three job descriptions in the DOT.

Conclusion

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).   Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g). Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision

16

and if the ALJ followed the applicable law.   Id.   After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenges.

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law.   As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

May 26, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.   Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.   If a party has objections, such objections must be timely filed, or further appeal is waived.   Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140 (1985).

May 26, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:          Counsel

18